United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Thank you, Ms. Tisa. My name is Beverly Martin and I'm delighted to be here today with my two colleagues, Judge Grant and Judge Brasher. I will tell you of all of my colleagues, I think this panel would very much love to be there with you in person in Miami, but you know it was not meant to be quite this early, but we hope maybe soon we can we can be joining you there in person. We know we've got experienced counsel today, so I assume you're familiar with our stoplight system and I will try to enforce the red light. Other than that, I think we're ready to get underway, so I'll call the first case of the United States v. Derrick Trittie. I hope I'm pronouncing his name correctly. Yes, your honor. Good morning. Judge Martin, may it please the court. This appeal requires the court to review the district court's order denying Mr. Trittie's motion for the imposition of a reduced sentence under section 404 of the First Step Act of 2018. The problem is that the order itself does not allow for meaningful appellate review by this court and unfortunately, well unfortunately for Mr. Trittie, but under the established law of this court, this would require the matter to be remanded back to the district court. And if you look at the language of the district court order, which is docket entry number 45, the problematic language comes in and it's not a very lengthy order, but it comes in where the district court says because any further reduction in defendant's sentence will reduce his sentence to one that would be lower than his new guideline range of 151 to 188 months, he was sentenced to 151 months. The court will not alter this sentence based on any arguments in the instant motion or any changes in the law pursuant to the First Step Act. And the problem with that is that is at best ambiguous as to whether the district court understood the full scope of its authority under section 404 of the First Step Act or was actually exercising its discretion not to go below the sentence that had already been imposed. Let me ask you a question about that. The government, I believe in response to the defendant's motion, conceded that this was a covered offense so that he could be re-sentenced, but simply argued that he shouldn't be re-sentenced. So why would a reasonable reading of the district court's order be that the district court sort of rejected the government's argument and found that he couldn't be re-sentenced? Yes, Your Honor. Actually, the problem here comes with the government's response to Mr. Treaty's one-page pro se motion. That's docket entry number 38, the government's response. Because in that response, the government argues that the district court is in fact prohibitive from sentencing Mr. Treaty below 151 based on policy statements and the sentencing guidelines, specifically under 1B1.10. Those policy statements do not apply here. This court has stated as much in several unpublished opinions and most recently in the Jones published opinion, the big opinion regarding section 404. In fact, the defendant here is almost exactly in the exact same position that the Johnson defendant was in Jones. And if you look at the Jones decision, that's 962 F 3rd 1290 from this court, specifically at page 1305. I believe that might be the last page where it says we cannot be sure that the district court understood its authority under Johnson. The exact same thing happened there. And to be fair to the government, Your Honor, this was at the onset of the section 404 motions and the government's at that point, both in Johnson and here in Mr. Treaty's case was that the policy statements under 1B1.10 applied and prevented the district court from sentencing somebody below what would be the new or in a motion for for reduction based on a retroactive amendment. The amended guideline range that is incorrect. And that this court held in John and Jones that for the Johnson defendant that was that was just incorrect. The order in the Johnson case, the Jones of Johnson defendant in the Jones case is almost exactly the same as the order here, where it is just unclear whether this record is saying I'm just exercising my authority and not sentencing below what is now the new sentencing range, or I lack the authority to send sent below the the sending range. And again, that has to do with the government's response, which is docket entry number 38. There is no other government response. So this case starts out Mr. Treaty files just a one page pro se motion. Very brief. The government has their response, which is at 38. Mr. Treaty tries a couple of times on pro se responses. Those would be docket entry number 39, which is very brief docket entry number 40. He does do a better job of explaining that the 1B1.10 is only applicable to these 3582 C2 motions. Those are the retroactive amendment motions and not applicable here. There's another response that's a little muddled. And then our office steps in and files a counseled motion in which it tells the court that the court is not restricted in any way by the policy statement to 1B1.10. Those don't apply here and that the district court has full authority to reduce the sentence as it sees fit at this point. I've understood your primary argument in your briefs here to be different than it seems what you're pressing now. I thought that you were trying to say that the district court was required to consider the 3553 A factors. Is that are you walking away from that argument? No, you're right. I think that the and the court is correct that this specific argument wasn't precisely placed in a brief. But the argument that was raised in the brief was that the sentencing the district court's decision here was both procedurally and substantively unreasonable. Part of the procedural unreasonableness has to do with the district court understanding the range of its authority. So there was more emphasis in the brief regarding the 3553 A factors, which the court at no time made mention of. But part of those... Where do you get the idea that the district court has to consider the 3553 A factors? Because the statute that you were proceeding under doesn't expressly require that. That's correct, John. But if you look at the language of the statute, it's very specific language. It provides that a court that has imposed a sentence for a covered offense, may on a motion by the defendant, imposed a reduced sentence. That's very, that's very specific language. It tells the court that it may now impose a reduced sentence. It doesn't say may reduce the term of imprisonment like the 3582 C2 motions do. And with that specific language, it brings along all the requirements when a district court imposes a sentence. That would include relying on the 3553 A factors and making sure that this imposed sentence that it is now given to the defendant, in fact, meets all the criteria under 3553 A. So that would be our argument that that specific language that Congress chose to use in 404 B really does require a district court that is deciding to impose now a reduced sentence that it take into consideration the 3553 A factors. And if the district court had done it. How do you harmonize that argument with Denson, where we held that this was not a plenary resentencing proceeding? That's correct, Your Honor. But I believe those are two different things. So plenary resentencing, I think, encompasses taken into new evidence. It might go back to recalculating some of the prior sensing calculations under various sensing guidelines provisions. And that's not what we're talking about here. This is simply looking at the 3553 A factors and making sure that when it is imposing a reduced sentence that the district court takes those factors into account. If the district court had taken those factors into account, one of those factors is, of course, the district court has to note the sentences that are available here. It would then have noted, um, I can reduce it below the 1 51 or I am limited by one B 1.10 and reducing it below the below the 1 51 that has already been asked you a question about the district court's order. The district court says I will not reduce the sentence. The district court didn't say I cannot reduce the sentence. And when I first read this order, it seemed pretty clear to me that the district court's word choice was basically saying, Look, I'm not going to do it. I already gave this guy the benefit of, um, a variance from the guidelines for this very reason, because the crack cocaine, powder cocaine disparity, and I will not give him the lower sentence. Why isn't? Why isn't that the right reading of the district court's order? Your Honor, I believe that is just as ambiguous as the order in the Johnson, the Johnson defendant and Jones case. In that case, the district court said that the First Step Act affords no further relief, uh, and leaves us for grounds on the I'm sorry, affords no further relief to Mr Johnson. That is very similar to I will not grant any relief. And the problem here was that again, the government specifically argued that he was prohibited from sentencing Mr Treaty or from granting a reduction further than the 1 51 based on the policy statement. I just I don't know. I mean, you're talking about a district court order in the other case that mentions the law and says, you know, the law doesn't give him anything. And this the district court says, because any further reduction in defendant's sentence would reduce his sentence to one that would be lower than his new guideline range of 151 to 188 months. The court will not alter this sentence based on any arguments in the instant motions or any changes in the law pursuant to the First Step Act. I mean, it seems like the court saying it doesn't matter what the First Step Act changed. It doesn't matter what the arguments were in the motions. I'm not gonna give him a lower sentence. That would be lower than the new guideline range. I mean, I get your 35 53 factor argument that the district court doesn't expressly consider those. But why shouldn't we read this as a discretionary decision not to reduce? I'm saying beyond my time. If I could just answer that briefly, Your Honor, um, I think just reading the language, um, also noting the fact that the government's sole response tells the court that it is prohibited from reducing it. When you put those two things together, um, it's at best ambiguous as to whether the district court understood that it had that authority to sentence or to reduce Mr Treaty since, uh, below the 151 that it had already provided for him. Um, and it is just as ambiguous as Johnson. Um, I also cited the recent decision United States versus Russell there again. Uh, even there, the district court actually mentioned 35 53 and this court still held that that the order just did not allow for a meaningful appellate review. I'm saying beyond my time, and I thank the court for additional time to answer. Thank you, Mr Lopez. We'll give you your full time for rebuttal. Thank you, Your Honor. Andrea Hoffman on behalf of the United States. I would turn the court's attention first to in the Supreme Court in Chavez Mesa stated that the history of the prior sentencing provisions, the original sentencing proceeding are often essential and critical to the analysis of a 35 82 reduction at a subsequent point, which this for the emotion would be. This court reaffirmed that premise in its recent first step back decision in Golden, and the reason why that's so critical in this case is because, as Judge Brasher referenced, this court in its sentencing proceeding for largely the entirety of the original sentencing proceeding dealt with a request by the defense for a variance and then a motion for variance by the government specifically because of the crack powder cocaine disparities at 100 to one. At that point, the sentencing was in April of 2010. The first step back came down in August, and the court in this case specifically granted the government's motion that gave this death defendant a sentencing as if the first step back were in place at that time in April of 2010. So as just as in the jelks opinion, a first step back case, and guy Ardo, which is an older case 2016, I believe, but also in both of those cases, a defendant in the first step case had already received the reduction that the first step back would have given him. And in the guy Ardo case, he'd already received the reduction that this amendment 782 would have given him at an earlier sentence in anticipation of either a dissatisfaction with what the how the procedures were going or recognition of what was coming down the pike in terms of the change of the law. That is not my excuse me for interrupting you. You're a very experienced prosecutor. We've been meeting like this for many years now. So I just want to be sure that I understand. I mean, you're not saying that the district court does not have to consider the 3553 a factors in a first step at resentencing. Are you or is that your argument? Your Honor, the court, the 11th Circuit in Jones made it clear that this is a may determination for the 11th Circuit. At this point, they have repeated in numerous published numerous opinions that they have yet your court has yet to make a determination in a published opinion about that. So the law that as we stand in the first step back case right now, as I understand it in the 11th is that the district court may consider the 3550. Yeah, I'm not asking you about our precedent. I'm asking you about your argument in this case. I mean, it seemed to me that you thought just like did consider the 3553 a factors in this case, or is that I do think that that's a fair reading of it, Your Honor, when you look when you do the two things that I'm saying right now, which is you look at the original sentencing where every one of the 3553 factors were walked through carefully. And then you look at this opinion and the court says you can tell that the court considered again the nature and circumstances of the offense because it described in the first page of the order in the second full paragraph, the court reiterates exactly what the defendant was charged from of he then considers the nature and circumstances or of this defendant by describing that he is a career offender. He then goes on to explain to you that the statutory penalties have changed which reiterating judge brushes recognition that this court knew this defense was eligible for reduction he went from a even references to the relevant position. So, thank you. I just want to. So, is it your argument that if in the original sentencing like 10 years ago or over 10 years ago, the court considered the 3553 a factors at that time but now in the recent thing or possible recent thing under the first step back, they don't have to do it again. I'm just trying to be sure I understand what you're arguing, Your Honor, from my, the way I see the state of the law in the 11th circuit is that if the record as a whole that the court has considered the 3553 factors, Eggersdorf, excuse me, I probably pronounced that wrong, being the preeminent case that set the standard for us in 3553 factors back in 1997 was a case in which the court recognized that it had looked at the motions, the record as a whole and being fully apprised or duly apprised. I don't remember which term. I'm really not asking about precedent, but you recognize that we don't have a published opinion on this. So, I'm trying to figure out what that's going to say. And so, is it the government's position that once the sentencing judge considered the 3553 a factors in imposing the original sentence, the recent thing under the first step act does not have to do that again. I think it is a may circumstance, Your Honor. The district court may consider it. It is not a must. The district court is not required to consider the 3553 factors. Fortunately for us in this case at the re-sentencing on the 404B circumstance, I believe the district court did and it demonstrated it in ways that I could look at further if you'd like me to. Is there, was there any variance in the 3553 a factors between the original sentencing and this motion? Because it was my understanding that the sentencing was like a year before the motion was filed. I mean, it wasn't that long before. Your Honor, it actually, he was sentenced, I believe in 2010, in April of 2010. And the first step act came down in the fall of 2010. And then this motion is in 2019. Well, I guess my point is the, well, nevermind. I guess my point is the judge had already considered all of these without question, Your Honor. I apologize. Is that, is that a requirement? I mean, I guess for, for all original sentencing cases, we obviously require consideration of the 3553A factors. So is that really something that makes a difference in the question? Or is it, is it just that this, in your argument, is it just that this particular statute doesn't separately require consideration of those factors? It's the latter, Your Honor, is to the overarching legal argument with the specificity to, when you then apply that specificity to this client, it particularly matters because this client has received, the purpose of the first sentencing act, first step act, excuse me, was to extend the benefits of the first, the fair sentencing act. It's a problem when they're all FSA. The fair sentencing act to defendants that had gotten caught in sort of the various loopholes that happened is, this court well knows, and I don't need to, I'm sure, give you a in-depth history. There was windows and pockets of time when various defendants were eligible. And the first step act is, in my opinion, an effort for Congress to go back and catch the various defendants who did not receive that benefit. This defendant specifically did. And why that recognized, the district court said, I will not, not I cannot. And as we said in the Jelks opinion, and I'm forgetting the site of the second case, but I'll get back to you. When it's clear what the district court will do, if it wasn't, if it didn't think it had an authority to do anything else, it would stop the analysis at earlier stages and it would use different terms of art. And saying, I will not reduce this any further, is this judge having spent a lengthy discussion of the 3553 factors originally, the disparity arguments that are the heart of the first sentencing act and the first step act. And recognizing and accrediting all of that in the original sentencing, his exercise of discretion in 2019 sits in a considerably different playing field than Johnson, for example, in the Jones case, which had none of that. You're saying that those past actions help us interpret the new order correctly? Yes, ma'am. That would be exactly. Well, go ahead. My question is on something different. I was just gonna ask you, what do you say about Mr. Lopez's argument about the government's response to the motion arguing that the judge could not change the sentence? I think he was reciting document 38. I do agree that the government referred to 1B1.10. And as Mr. Lopez acknowledged, the final pleading on this matter is a counsel pleading by defense counsel that completely attacked that argument and spent the majority of its opinion saying to the court, explained to the court why it did have the authority to make a different sentencing determination than what the government was recommending. And when you consider what the court had to say in the original sentencing about this defendant's recidivism, his repeat violations, his lack of consideration, he had been in and out of jail over and over and over and over again for at least six different drug offenses of resisting arrest with violence. And the court's view was nobody's getting this defendant's attention at any point in time. And he's received extensive benefits and shortened sentences and pure probationary sentences. And the court walked through all of that and his history of abuse and his circumstances as a family. When you look at the depth with which the court, because sometimes district court sentencings, they discuss the 3553 factors sufficiently just to be for appellate review. It's still not terribly in depth. This one was. Did the government ever concede eligibility under the First Step Act or your position is that the court obviously understood the eligibility? The government did concede eligibility. The government agreed at district court level that he was eligible, and we continued to reiterate that at the appellate level. And the government then is the one that moved the court to sentence him as a 841B1B1C offense, not a B offense. So the government actually formally made that motion, which this court reiterated in the final line of the 404B order. You know, in addition, it did consider the type of sentences that was possible because it discussed its variance decisions at the earlier proceeding and why it didn't go into why it did it. But if you know the background, it's referencing to that is telling you it was aware of its opportunities. The court even discussed the difference of a variance versus departure at the original sentencing and made its specific determinations to do that with respect to the Let me ask you. Let me ask you just to drill down on Judge Grant's question. So the way I haven't looked at the document that was filed in a little while, but the way I understood it was that the government was conceding this was a covered offense that could be reduced, but the government was arguing that the district court just couldn't go below the guideline range. Was that the argument that the government was making that under the statute it was a covered offense, so there could be a reduction, but that reductions could not go below the guideline range? The government was definitely making the commensurate kind of argument that would have happened if this had been, for example, Amendment 782, where the district court had gone below the advisory guidelines in the original sentence and then 782 passed, and the original sentence was the bottom of the new revised guidelines. In that case, in an amendment case, the policy statement at 1B110 would hold the sentence at the bottom of that revised range, and that is the argument that the government was making that that would be commensurate here, because at this point, unfortunately, this case was fully briefed nine months or more before Jones came out, and the appellate case was briefed months before the Jones case came out, and the underlying case was even longer, more than a year before Jones came out, so we didn't have the benefit of the complex analysis that finally came down in Jones, so at that point, the government was still arguing that it was equivalent to a 782 amendment. The defense counsel did not argue that and argued vehemently against it and Do you all, do you have an argument that Mr. Tritty forfeited his argument about eligibility, or is that something that you're not asserting before us? I'm sorry, am I arguing that, am I? Do you have an argument that Mr. Tritty forfeited the point that the eligibility point by not raising in his brief, or are you not making that argument? The argument that Mr. Lopez started with this It is not briefed, Your Honor, and we have not had the opportunity to elaborate upon that, and ordinarily, an argument that is not fully raised in your briefs is waived, and so I would argue that the argument Mr. Lopez started with should be not considered by this court, that it should focus upon his 3553 argument. Thank you. If there are no other questions, I'm almost out of time exercise of its discretion and find that it did not abuse it. Mr. Lopez. Thank you. You know, one thing I wanted to bring back is to the actual language of Section 404, because by definition, Section 404 only applies to defendants who were sentenced prior to August 3, 2010. That means that by definition, any defendant that's going to receive any kind of benefit, in other words, when the district court is going to impose a reduced sentence on any one of these defendants, by definition, that defendant would have been sentenced around a decade or more earlier. So the idea that anything that the district court might have done or gone over at the initial sentencing can somehow cover this 404 proceeding that is happening at least a does not hold water. In fact, if you look at the very 3553 factors, most of those will have, in fact, changed by the time that the district court is considering whether it's going to impose a reduced sentence. Certainly some of the nature and circumstances of the offense might have changed, but the seriousness of the offense has changed. For example, in this case, at the time of sentencing, this was a serious offense that required a maximum sentence of 40 years. At the 404 stage, it's an offense. I want you to respond to what I concede, what I kind of thought was the government's point on this, because I got kind of confused about the years too. I mean, I think the government's point was not that the motion came quickly after the sentencing, which was how I was confused, but that the Fair Sentencing Act and the First Step Act followed on shortly after the original sentencing, and the district court had already envisioned that those were going to happen and had already accounted for those. I think that was the government's point. So how did things change if the district court had already sort of accounted for the new statutes that were going to come down? Well, there are two things I think included in your honor's question. One of them is, can you look back at the sentencing and say the way definitively that the reduction was given because of the 100 to 1 ratio that was about to be changed in August of 2010. And if you look at the sentencing transcript itself, I believe on page 28 is where the district court's decision actually starts. It is as unclear as docket entry number 45 as to whether that variance is based solely on the 100 to 1 ratio. The district court never makes that clear. There were numerous factors that the defense argued at the time of the original sentencing for the variance. In fact, if you look at the sentencing transcript again, counsel for Mr. Treaty spent about five pages going over the various factors that weren't a variance before he even says anything about the 100 to 1 ratio. So yes, the government at time of sentencing basically conceded that a variance would be applicable based on the 100 to 1, but there were a lot of factors that were argued and the district court never made clear that that's what it was based in its variance on. But the idea that, again, the sentencing that happened 10 years ago, if as long as the district court goes over the 3553 factors 10 years prior, can somehow cover a 404 reimposition of a reduced sentence, just doesn't hold water and is not consistent with this court's law. And if you just look at that, can I ask you a question about how this works? I know that you guys have dealt in this a lot over the last couple of years. Is there a, is there like a, some kind of number of motions that can be filed under the First Step Act? Do you only get one motion? Is there some kind of procedure to file successive motions? Is there anything that would limit an inmate just to file successive motions under the First Step Act? Well, under the First Step Act as a whole, there are various sections, but under this section, under this section, you basically get one shot at the apple. You get one bite at the apple, and that's in the language of Section 404, subsection C. And it really is there to ensure that, in my view, it's there to ensure that all these defendants that were sentenced in almost a quarter of a century under this basically racist sentencing scheme have at least one shot to go before a district court judge and say, okay, can you please just take a look at this case, take a look at my case and see if the Fair Sentencing Act had been in effect when I committed this offense, would I have received a lower sentence based on the person that I am now? And the district court can say yes or no based on all the factors, and Congress trusted that to the district court. The problem here is that the district court was not clear as to whether it understood its full authority that, in fact, it could go below the amended range or the new range, and that was based in large part on the government's filing. I'm sorry. What's your response to the contention that that argument has been forfeited by your client? Yes, Your Honor. As I stated earlier, I believe that that is a legal point that basically supports the greater argument that was made in the brief. If you look at the heading and the arguments that were made, the argument that was made was that the district court's decision was procedurally unfair and also substantively unfair. And so this goes to the procedure, and there are several cases controlling law in this circuit saying that when a district court just basically fails to understand the full scope of its authority, that's a procedural error in the sentencing, or at least in determining whether to impose a sentence or whether to here impose a reduced sentence. So the argument that we're making here is just a small point that would further the greater argument that was made in the briefing. But I agree that that specific point was not included in the briefing that specifically. But I think the argument that we're making here, all the arguments that we're making here are in support of the greater argument that was relied on in the brief. I see I'm way past my time, and so I would just thank the court for all its time. And just basically the district court order here, and I really have a lot of respect for this court judge, but the order here just does not allow this court full, meaningful appellate review. And under the established law of this court, that must be reversed and vacated and remanded to the district court. Thank you. Thank you, Mr. Lopez. Thank you, Ms. Hoffman.